Page **1** of **33**

# UNITED STATES DISTRICT COURT

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

## DISTRICT OF NEW JERSEY

2022 JUL 20  A 10 15

|  |  |  |
|---|---|---|
|  | : | **CIVIL ACTION** |
|  | : | **Case #:** _____ |
|  | : |  |
| **JOSE O. TORRES** | : | **Civil Complaint** |
|  | : | **For Injunctive Relief and Declaratory Damages** |
|  | : |  |
| **V.** | : |  |
| **SHER TREMONTE LLP** | : | **Demand for Jury Trial** |
| **JUSTIN M. SHER** | : |  |
| **MICHAEL TREMONTE** | : | <u>**Applicable Statutes**</u> |
| **NOAM KORATI BIALE** | : | **18 USC § 1962(c) and (d) Federal Civil RICO** |
| **ANNA MARIA ESTEVAO** | : |  |
| **TORE IKELAND LAW PLLC** | : | <u>**Applicable Jurisdiction Statutes**</u> |
| **TORE IKELAND** | : | **28 USC § 1331 Federal Question Jurisdiction** |
| **JESSICA COONROD** | : |  |
| **ARGENTINO, FIORE LAW ADVOCACY LLC** | : | <u>**Applicable Injunctive Relief**</u> |
| **JODI ARGENTINO** | : | **18 USC § 1964** |
| **CELESTE FIORE** | : |  |
| **FRANK MORANO** | : |  |

# Table of Contents

**SECTION 1: JURISDICTION** ............................................................................................................... 3

**SECTION 2: PREVIOUS CIVIL ACTION** ................................................................................................ 3

**SECTION 3: PARTIES** .......................................................................................................................... 3

**SECTION 4: STATEMENT OF CLAIM** .................................................................................................. 4

(a)     **Description of conspiracy** - Describe in detail the alleged conspiracy forming the basis of this action. .............. 4

(b)     **Identify each person or entity who entered into or participated in the conspiracy -** Set forth the factual basis for the allegations that: a. such conspiracy existed; b. certain acts done in furtherance of it were done wilfully, intentionally and maliciously with the intent to harm the plaintiff and/or to benefit the defendants and others, including the co-conspirators, at the expense of the plaintiff. .................................................................................................. 6

(c)     **Differences** - Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity, and discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all. ...................................................................................................................................... 19

(d)     **Benefits received** - Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering. ............................................................................................................................................... 19

(e)     **Documents** - if this allegation is based upon any documents obtained from any source, identify these documents. ............................................................................................................................................... 20

(f)     **Statutes** - the specific statutes which are violated. .......................................................................... 20

(g)     **Correspondence with law enforcement/regulatory agencies -** Identify any correspondence or communications received from or made to any state or federal law enforcement or regulatory agency regarding the facts and circumstances surrounding the claims of the plaintiff which are the subject of the present litigation. .......... 27

**SECTION 5: COUNTS** ....................................................................................................................... 28

**SECTION 6: INJURIES / DAMAGES** .................................................................................................. 28

(a)     **Injury to Business** – Calculation of Injury to Business .......................................................................... 28

(b)     **Violations Causing Injuries -** Describe the direct causal relationship between the alleged injury and the violation of the RICO statute. ............................................................................................................................. 31

(c)     **Each Defendant's Liability -** List the damages sustained by reason of the violation of Section 1962, indicating the amount for which each defendant allegedly is liable. ................................................................................. 31

**SECTION 7: INJUNCTIVE RELIEF & RESTRAINING ORDER** ............................................................... 32

**SECTION 8: DEMAND FOR JURY TRIAL** .......................................................................................... 32

**SECTION 9: PRAYER** ....................................................................................................................... 32

**CERTIFICATION OF PLAINTIFF** ....................................................................................................... 33

# SECTION 1: JURISDICTION

For 18 U.S.C.S. §§ 1961-1968, 18 U.S.C.S. § 1962 provides the District Court original jurisdiction as per RICO claims under 18 U.S.C.S. § 1964(a), (b), (c) and (d). RICO claims invoke federal question subject matter jurisdiction and thus the law of the forum is federal law. *See Bridge v. Invest Am., Inc.*, 748 F. Supp. 948 (D. R.I. 1990)

Defendants Criminal Enterprise affected interstate commerce as Defendants conspired with each other in New York and New Jersey and with prostitutes in New York, Pennsylvania, Nevada, Hawaii and Canada among other unknown locations to strategize and plan the Criminal Enterprise.

The requirements that a RICO plaintiff must satisfy in conjunction with invoking competent personal jurisdiction include subject matter jurisdiction, appropriate venue, a constitutionally sufficient relationship between the defendant and the forum, and authorization for service of a summons on the person. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998) (quoting *Omni Capital Intl v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987)).

# SECTION 2: PREVIOUS CIVIL ACTION

Plaintiff has not filed any lawsuit(s) in any State court or any Federal District Court.

# SECTION 3: PARTIES

## PLAINTIFF

1. Jose Torres, 354 Doremus Ave. Newark, New Jersey, 07105.

## DEFENDANTS

1) SHER TREMONTE LLP, 90 Broad Street, 23rd Floor, New York, NY 10004
2) JUSTIN SHER, ESQ., 90 Broad Street, 23rd Floor, New York, NY 10004
3) MICHAEL TREMONTE, ESQ., 90 Broad Street, 23rd Floor, New York, NY 10004
4) NOAM KORATI BIALE, ESQ., 90 Broad Street, 23rd Floor, New York, NY 10004
5) ANNA MARIA ESTEVAO, ESQ., 90 Broad Street, 23rd Floor, New York, NY 10004
6) TORE IKELAND LAW PLLC, 30 Wall Street, 8th Floor, New York, NY 10005
7) TORE IKELAND, ESQ., 30 Wall Street, 8th Floor, New York, NY 10005
8) JESSICA COONROD, ESQ., Pharmapacks, 1985 Marcus Avenue, Suite 207, New Hyde Park, NY 11042
9) ARGENTINO, FIORE LAW ADVOCACY LLC, 50 Church Street, Suite 106, Montclair, NJ 07042
10) JODI ARGENTINO, ESQ., 50 Church Street, Suite 106, Montclair, NJ 07042
11) CELESTE FIORE, ESQ., 50 Church Street, Suite 106, Montclair, NJ 07042
12) FRANK MORANO, ESQ., 50 Church Street, Suite 106, Montclair, NJ 07042

We maintain the right to amend the list of defendants at any time.

# SECTION 4: STATEMENT OF CLAIM

**(a) Description of conspiracy** - Describe in detail the alleged conspiracy forming the basis of this action.

Conspirators are comprised of three law firms and nine attorneys, some whom are owners and others are employees of these law firms. These law firms and attorneys are located in NYC, New York and in Montclair, New Jersey. The names of the firms in the conspiracy are: Sher Tremonte LLP; Tore Ikeland Law PLLC; and Argentino, Fiore Law Advocacy. Attorneys involved in the conspiracy are: Justin M. Sher, Sher Tremonte co-founding partner; Michael Tremonte, co-founding partner; Noam Korati Biale, Sher Tremonte attorney; Anna Maria Estevao, Sher Tremonte associate attorney; Tore Ikeland, Tore Ikeland Law manag ng partner; Jessica Coonrod, Tore Ikeland Law associate attorney; Jodi Argentino, Argentino, Fiore Law Advocacy managing partner; Celeste Fiore, Argentino, Fiore Law Advocacy managing partner; and Frank Moran ), Argentino, Fiore Law Advocacy attorney.

Conspirators formed a Criminal Enterprise in or around June 2019 through the date of the filing of this complaint. Defendants within and among each other conspired with the multi-billion dollar illegal prostitution industry to create a new untapped client base for their law firms by offering to collect illicit criminal debt from patrons ("johns") of the illegal prostitution trade. This is no different than a law firm or a police officer creating a market to collect debt that is owed to drug dealers, illegal gambling outfits, or any other il egal business, and overtly advertising to find more drug dealers to collect for. The collection of illegal black market criminal debt would normally be reserved for collection thugs who may go to see debtors and threaten them physically to get the proceeds of the ill-gotten gains of the crimes committed.

Conspirators committed overt acts by advertising via the internet their collection services, thereby looking for prostitutes and sex traffickers involved in illegal prostitution, who are in violation of the Mann Act of 1910 - USCS § 2422(a), who conspirators can represent to collect the ill-gotten criminal debt. The conspirators further violated Federal Money Laundering statute USCS § 1956(h), by their acts and attempts to collect proceeds of criminal activity, namely illegal prostitution and sex trafficking. Co-conspirators are further in violation of federal law USCS § 2 Aiding and Abetting USCS § 2422(a).

The illegal conspiracy developed by defendants involves law firms and attorneys recruiting and then signing legal representation agreements with prostitutes and sex traffickers who respond to the national internet advertisement(s). The purpose of their ad(s) was to locate prostitutes and sex traffickers who were owed money. To maximize the number of interested criminal prostitutes and sex traffickers, conspirators agreed to represent the prostitutes and sex traffickers with no money out of pocket by providing legal representation. This may involve a contingency percentage paid to the law firm(s), along with the referrals that will come in from word of mouth within the prostitution and sex trafficking industry. These referrals create opportunities for more contingency agreements and more referrals. These relationships will generate revenue for Sher Tremonte LLP; Tore Ikeland Law PLLC; and Argentino, Fiore Law Advocacy LLC as the "go to" law firms for any and all legal and collection services needed by prostitutes and sex traffickers. This scheme allows these law firms to generate significant revenue in an untapped multi-billion dollar industry, "the prostitution and sex trafficking industry."

Per Federal Agent's notes in document re: 343-NK-2955903, dated 8/29/2019, the Agent wrote

> "A July 2019 post on the SexWorkersOnly sub-Reddit and a blog on post on www.maggiemcneill.wordpress.com/2019/6/24/joey-the-player indicated that the law firm ▓▓ was looking for victims of Torres in order to initiate a civil lawsuit. A review of ▓▓ confirmed that the contact information given is for ▓▓ and ▓▓."

The above blog refers to Sher Tremonte LLP and Sher Tremonte attorneys.

Given that Sher Tremonte was unsuccessful in their attempt to sue the plaintiff, Jose Torres, in 2019, co-conspirator Sher Tremonte utilized and influenced a former employee of Sher Tremonte, Emma S. Spiro, who left Sher Tremonte on or about June 7, 2019 and began working as an Assistant United States Attorney for the District of New Jersey on June 24, 2019. In furtherance of the conspiracy, Emma Spiro then proceeded to use the United States Department of Justice resources and agents to locate more prostitutes engaged in illegal prostitution in violation of USCS § 2422(a). The relationship with Emma Spiro creates the significant benefit to the co-conspirators because A.U.S.A. Emma Spiro can then prosecute "johns" criminally while the prostitutes and sex traffickers that retained the law firms would receive a financial benefit under the Crime Victims' Rights Act (CVRA) and the Mandatory Victims Restitution Act (MVRA) in the form of restitution. Sher Tremonte used their government connection, Emma Spiro, as a way for Torres to pay his illegal prostitution debt.

Sher Tremonte and co-conspirators further goal is to locate "johns" who are wealthy citizens, public figures, government officials, politicians or professionals who the prostitutes and the co-conspirators believe have the financial means to pay out judgments to Sher Tremonte and their co-conspirators. These prostitutes charge as much as $1,200 per hour for their basic prostitution services while running scams on "johns" using pressure tactics, "bait and switch" and unreasonable upsells.

The conspirators knowingly took these actions in violation of USCS § 1956(h), Federal Money Laundering and were fully aware that the prostitutes were violating criminal statutes USCS § 2422(a), along with other state prostitution and sex trafficking statutes, including N.J.S.A. 2C:34-1 Promotion of Prostitution.

In order for the plaintiff to prove a RICO substantive act under Title 18 U.S.C.S. §1962(c), the plaintiff must prove each of the following elements. *This charge pertains only to Sher Tremonte LLP and their attorneys listed on this complaint.*

First, you must find the existence of an enterprise. *The law firms are operating as legal entities representing clients in civil and criminal matters. The law firms are located in NYC, NY and Montclair, NJ.*

Second, you must find that the enterprise engaged in, or had some effect on, interstate or foreign commerce. *All of the law firms / attorneys engaged in telephone interviews with the prostitutes and sex traffickers, federal agents, and A.U.S.A. Emma Spiro. The prostitutes and sex traffickers are located in Hawaii, Nevada, New York, and Canada.*

Third, you must find that [name of defendant] was employed by or associated with the alleged enterprise. *All of the defendants are either owners and/or employees of the enterprise. Therefore, the attorneys are all associated with the enterprise.*

Four, you must find that [name of defendant] participated, either directly or indirectly, in the conduct of the affairs of the enterprise. *All of the defendants/attorneys participate directly in the affairs of the enterprise.*

And fifth, you must find that [name of defendant] participated through a pattern of racketeering activity. *All of the defendants/attorneys engaged in a pattern of racketeering activity by engaging in substantive acts to collect unlawful debt derived from criminal actively, namely prostitution and sex trafficking.*

For every one of the defendants, Sher Tremonte LLP and their attorneys, listed on this complaint, the plaintiff can prove at trial beyond a reasonable doubt each of the elements listed above.

In order for the plaintiff to prove a RICO conspiracy under Title 18 U.S.C.S. 1962(d), the plaintiff most prove each of the following two elements by a preponderance of the evidence. *This charge pertains to every defendant listed on this complaint.*

First, you must find that two or more people agreed to try to accomplish an unlawful plan to engage in a pattern of racketeering activity. *Attorney(s) engaged in the unlawful plan to collect unlawful debts derived from illegal prostitution and sex trafficking.*

And second, you must find that the conspirators agreed to the overall objective of the conspiracy. *The attorneys and the prostitutes and/or sex traffickers knowingly agreed to engage in the collection of unlawful debt derived from the illegal commercial sex industry.*

Or as an alternative to the second element, you must find that a defendant agreed with at least one another defendant to commit two predicate acts as part of the conspiracy.

For every one of the defendants listed on this complaint, the plaintiff can prove at trial by a preponderance of the evidence each of the elements listed above.

**(b) Identify each person or entity who entered into or participated in the conspiracy -** Set forth the factual basis for the allegations that: a. such conspiracy existed; b. certain acts done in furtherance of it were done wilfully, intentionally and maliciously with the intent to harm the plaintiff and/or to benefit the defendants and others, including the co-conspirators, at the expense of the plaintiff.

## CO-DEFENDANT - SHER TREMONTE LLP

Sher Tremonte LLP is a law firm located at 90 Broad Street, New York, New York. In or around June 2019 Sher Tremonte knowingly initiated communication with various prostitutes and sex traffickers who felt that they were owed money by Jose Torres for their illegal prostitution services. Sher Tremonte then posted a national internet advertisement searching for more prostitutes and sex traffickers who alleged were owed money by Jose Torres. Sher Tremonte further communicated with an organization called the "Sex Workers Outreach Program" (SWOP) to entice and to get assistance in locating more prostitutes "potential clients" that Torres owed money to. Sher Tremonte was fully aware that the prostitutes and sex traffickers they were sourcing were involved in criminal activity. All of Sher Tremonte's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Sher Tremonte, as a law firm, must review and approve all new clients and check for "conflicts of interest" and other legal pitfalls. Sher Tremonte nonetheless ignored the fact that these new clients were involved in illegal sex activities, such as sex trafficking and illegal prostitution. Sher Tremonte instead moved forward and signed legal representation agreements with the prostitutes and sex trafficker(s). All of Sher Tremonte's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

To further the illegal collections, Sher Tremonte hatched a scheme and utilized their former employee Emma S. Spiro to initiate a criminal complaint against the first "john" in their scheme to attempt to create a conviction that would generate revenues via restitution and civil lawsuits that generally follow a criminal conviction, along with capturing the prostitution industry, which would generate revenues by representing other prostitutes and sex traffickers in similar or unrelated civil and criminal matters. Emma Spiro then searched federal statutes to twist the 2422(a) statute to attempt to apply it to a "john", in the hope of creating a criminal conviction. While extensive case law of over 112 years shows that the statute does not apply to "johns", the hope was that the first defendant

would fold quickly, creating a conviction, which would allow Sher Tremonte to move in with their civil lawsuits and be deemed as the "go to law firm" for collecting criminal debt derived from the prostitution and sex trafficking industry. All of Sher Tremonte's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Sher Tremonte further conspired with the prostitutes, sex traffickers, A.U.S.A. Emma Spiro, FBI Agent Michael Scimeca and DHS Ronald Conyers to manufacture, concoct, and create false narratives of violence by the "john" in order to attempt to create public outrage, disparage the defendant in his criminal case, and color the Federal Judges. This deceptive act of falsely creating a violence distraction is supported by documented evidence from the prostitutes and sex traffickers' posts and communications in online forums which are currently displayed on the internet as we speak and also included in Torres' discovery. Discovery in the case will further supplement the evidence by showing that Sher Tremonte and the Sex Workers Outreach Program pushed the traffickers and prostitutes to spread this false content in various online forums, including but not limited to Twitter, YouTube, Badboys.com, joeytheplayer.com. The prostitutes, sex traffickers, and the Sex Workers Outreach Program with the advice of Sher Tremonte disparaged Torres online to further their deception. Discovery evidence indicates Emma Spiro was also involved in this deception as the deception commenced prior to and after Emma Spiro left Sher Tremonte LLP on Friday, June 7th, 2019 and while Emma Spiro was between jobs, transitioning between Sher Tremonte and the Government. All of Sher Tremonte's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Sher Tremonte has current legal representation agreements with the following prostitutes and sex traffickers. Additional unknown uncharged prostitutes may exist that are represented by Sher Tremonte.

(1) PROSTITUTE "Lindsey B." aka Marie Sinclair.
(2) PROSTITUTE "Katherine L." aka Mareka
(3) PROSTITUTE "Chelsea L." aka Dorothy Gale
(4) PROSTITUTE "Anna T." aka Ivy Rose
(5) PROSTITUTE "Abigail"
(6) PROSTITUTE "Allison"

1) Lindsey B., 2) Katherine L., 3) Chelsea L., 4) Anna T., 5) Abigail, and 6) Allison engaged in an overnight prostitution date with Jose Torres on May 27, 2015, October 19, 2019, May 20, 2018, November 18, 2015, August 25, 2019, and April 7, 2014, respectively.

Sher Tremonte's RICO conspiratorial agreement is to assist in the collection of criminal debt derived from prostitution, namely USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution. Conspiring and engaging in substantive acts to collect ill-gotten debt from criminal activity is in violation of USCS § 1956(h) Conspiracy to Money Laundering and Title 18 U.S.C.S. 1962(c) and (d). Sher Tremonte is further in violation of USCS § 2 Aiding and Abetting USCS § 2422(a). Sher Tremonte continues the criminal enterprise with the above acts and amongst the co-conspirators to the present date of the filing of this complaint. Sher Tremonte LLP's penetration of this untapped multi-billion dollar market would further Sher Tremonte LLP's reputational and financial benefit to the law firm through the collection of criminal debt and securing the position as the "go to law firm" for the sex trafficking and prostitution industry in the United States.

## Sher Tremonte signed a legal representation agreement with prostitute, "LINDSEY B." aka MARIE SINCLAIR, to collect criminal debt derived from her illegal prostitution business

"Lindsey B." signed a legal representation agreement with co-conspirator Sher Tremonte LLP in or around November 2019 to assist in the collection of criminal prostitution debt. This debt would be collected through the

CVRA and MVRA restitution as long as "Lindsey B." assists in the prosecution of the f rst "john" that was targeted. Further revenue is to be generated by lawsuits that generally follow after a crimir al conviction of the given "john", along with other revenues from other prostitutes and sex traffickers, relating to sin ilar or unrelated civil and criminal matters the prostitutes and sex traffickers may need. All of Sher Tremont e's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torre i.

Prostitute Lindsey B., aka Marie Sinclair, is still engaged in illegal prostitution in violatic n c f USCS 2422(a) punishable by a term of up to 20 years imprisonment, along with N.J.S.A. 2C:34-1 Promotic n c f Prostitution in the 2nd degree, punishable by a term of 5 to 10 years. Evidence within the case of United St ites v. Torres (Case #: 20-CR-418 BRM) provides clear and convincing evidence that "Lindsey B." had committed the criminal elements in violation of these statutes. Lindsey B. is represented by Sher Tremonte LLP, Noa n K. Biale, and Anna M. Estevao.

"Lindsey B." posted sexually explicit and nude internet advertisements on Backpage.cor 1 to solicit "johns" for her illegal prostitution business. Evidence within the Torres case confirms that Lindsey B. performed sex acts within the State of New Jersey and allegedly traveled from New York State to do so. "Lindsey B." is currently promoting her prostitution business through her own personal website www.missmariesinc lair or via another personal prostitution website, twitter - @KittyKatMarieS, Instagram, and Eros.com. The ev dence is clear and convincing that she is currently in the illegal prostitution business. Lindsey B. has posted iates of S1,200 per hour, \$2,000 for two hours, and \$1,000 per hour for each additional hour.

"Lindsey B." made false statements to law enforcement stating that she flew out from Las Vegas on May 27, 2015 to New Jersey specifically to meet with the "john" Jose Torres who found her online on "backpage.com". However, later interviews with this prostitute showed that she had in fact met the "john" whi e she was in New York City "visiting" the area to promote her illegal prostitution business from a backpage.com idvertisement that Lindsey B. posted to drum up local business.

"Lindsey B." made a post on whocallsme.com on May 28, 2015 stating that she has an uncollected debt from Jose Torres from her illegal prostitution business. This said criminal prostitution debt is the debt that Lindsey B. conspired with the co-conspirators to collect. Lindsey B. even uses the term "raping" as a mar net of saying that she was not paid and discusses the details that the transfer of \$9,800 did not arrive. This said debt is part of the money laundering scheme that was hatched directly with Sher Tremonte LLP, Noam Biale, An na Estevao, Justin Sher, Michael Tremonte and their co-conspirators.

Upon Lindsey B.'s return to Las Vegas four days later, Lindsey filed a police report on June 1, 2015 with the Las Vegas Metropolitan Police Department that she is owed a debt of \$9,800 by "Joey" or "Jose Torres". While Torres drove Lindsey B. after the encounter to a local cab company over 6 miles away from To res location and she had benevolent communication with Torres after she was dropped off, within the Las Vegas police report Lindsey B. bolsters her report with false accusations of violence. In fact Lindsey B. was trying to find a way to collect the \$9,800 debt. This was solved with the hiring of Sher Tremonte LLP sometime in or a ro. nd June 2019 to collect the criminal debt.

Lindsey B. furthers the deception with a post made online via her twitter account @KittyKatM arieS on July 18, 2019 that Torres met her in Las Vegas in July 2019 and sexually assaulted her. However, he one and only time Torres traveled to Las Vegas was around 2013. Torres met Lindsey B. for the first time in May 2015 and that was in New Jersey. Torres never met Lindsey B. ever again other than the one time in 201£. The statement was another bald faced lie.

Lindsey B.'s agreement is to provide Sher Tremonte LLP and co-conspirators with the $9,800 of criminal debt from her illegal prostitution business for co-conspirators to collect. Lindsey B. is further in violation of USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution, along with Conspiracy to Money Laundering in violation of USCS § 1956(h).

## Sher Tremonte signed a legal representation agreement with prostitute, "KATHERINE L." aka MAREKA, to collect criminal debt derived from her illegal prostitution business

"Katherine L." signed a legal representation agreement with co-conspirator Sher Tremonte LLP in or around October 30, 2019 to assist in the collection of criminal debt derived from prostitution. This debt would be collected through the CVRA and MVRA restitution as long as "Katherine" assists in the prosecution of the first "john" that was targeted. Further revenue is to be generated by lawsuits that generally follow after a criminal conviction, along with other revenues from other prostitutes and sex traffickers, relating to similar or unrelated civil and criminal matters the prostitutes and sex traffickers may need.

Prostitute "Katherine L." aka Mareka was engaged in illegal prostitution in violation of USCS 2422(a) punishable by a term of up to 20 years imprisonment, along with N.J.S.A. 2C:34-1 Promotion of Prostitution in the 2nd degree, punishable by a term of 5 to 10 years. Evidence within the case of United States v. Torres (Case #: 20-CR-418 BRM) provides clear and convincing evidence that "Katherine L." had committed the criminal elements in violation of these statutes.

"Katherine L." posted sexually explicit and nude internet advertisements on highsociety.com and eros.com to solicit "johns" for her prostitution business. Evidence within the Torres case confirms that Katherine performed sex acts within the State of New Jersey and traveled from Toronto, Canada to do so.

"Katherine L." provided Sher Tremonte LLP with a check, dated October 20, 2019, check # 5500, as the financial instrument for confirmation of the criminal debt that her co-conspirators were to collect.

Katherine L.'s agreement is to provide Sher Tremonte and co-conspirators with $20,000 allegedly owed by Jose Torres in debt of her criminal prostitution business for Sher Tremonte to collect. Katherine L. is further in violation of USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution, along with Conspiracy to Money Laundering in violation of USCS § 1956(h).

## Sher Tremonte signed a legal representation agreement with prostitute, "CHELSEA L." aka DOROTHY GALE, to collect criminal debt derived from her illegal prostitution business

"Chelsea L." signed a legal representation agreement with co-conspirator Sher Tremonte LLP in or around October 4, 2019 to assist in the collection of criminal debt. This debt would be collected through the CVRA and MVRA restitution as long as "Chelsea L." assists in the prosecution of the first "john" Jose Torres. Additional revenue is to be generated by Sher Tremonte through civil lawsuits that generally follow after a criminal conviction and from new clients "prostitutes" and "sex traffickers" that would need Sher Tremonte's legal and collection services. All of Sher Tremonte's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Prostitute "Chelsea L." aka Dorothy Gale is engaged in the illegal prostitution business in violation of USCS 2422(a) punishable by a term of up to 20 years imprisonment, along with N.J.S.A. 2C:34-1 Promotion of Prostitution in the 2nd degree, punishable by a term of 5 to 10 years. Evidence within the case of United States

v. Torres (Case #: 20-CR-418 BRM) provides clear and convincing evidence that "Chelsea L." had committed and continues to commit the criminal elements in violation of these statutes.

"Chelsea L." posts sexually explicit internet advertisements on eros.com and tryst.com to solicit "johns" for her illegal prostitution business. Evidence within the Torres case confirms that "Chelsea L." performed sex acts within the State of New Jersey and allegedly traveled from New York State to do so. "Chelsea L." is currently promoting her prostitution business through tryst.com. The evidence is clear and convincing that Chelsea L. is currently in the illegal prostitution business. Chelsea L. has posted rates of $800+ per hour for her basic prostitution services.

"Chelsea L." made statements to federal agents on October 4, 2019 that she is owed $12,500 by the "john" Jose Torres.

Chelsea's agreement is to provide Sher Tremonte and co-conspirators with $12,500 in debt of her criminal prostitution business for Sher Tremonte to collect. Chelsea L. is further in violation of USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution, along with Conspiracy to Money Laundering in violation of USCS § 1956(h).

## Sher Tremonte signed a legal representation agreement with prostitute, "ANNA T." aka IVY ROSE, to collect criminal debt derived from her illegal prostitution business

"Anna T." signed a legal representation agreement with co-conspirator Sher Tremonte LLP in or around August 31, 2020 to assist in the collection of criminal debt. This debt would be collected through the CVRA and MVRA restitution as long as "Anna" assists in the prosecution of the first "john" that was targeted by Sher Tremonte LLP. Further revenue is to be generated by subsequent lawsuits that would follow after a criminal conviction of the given "john", along with other revenues from other prostitutes and sex traffickers relating to similar or unrelated civil and criminal matters the prostitutes and sex traffickers may need. All of Sher Tremonte's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Prostitute Anna T. aka Ivy Rose is engaged in illegal prostitution in violation of USCS 2422(a) punishable by a term of up to 20 years imprisonment, along with N.J.S.A. 2C:34-1 Promotion of Prostitution in the 2nd degree, punishable by a term of 5 to 10 years. Evidence within the case of United States v. Torres (Case #: 20-CR-418 BRM) provides clear and convincing evidence that "Anna T." had committed the criminal elements in violation of these statutes.

"Anna T." posted sexually explicit internet advertisements on eros.com to solicit "johns" for her prostitution business. Evidence within the Torres case confirms that Anna T. performed sex acts within the State of New Jersey and traveled from New York State to do so. "Anna T." is currently promoting her prostitution business through her own website www.climbingivyrose.com, twitter - @ivyroseNYC, and Instagram - www.instagram.com/climbingivyrose. The evidence is clear and convincing that Anna T. is currently in the illegal prostitution business. Anna T. has posted rates of $1000+ per hour for her basic prostitution services.

"Anna T." made statements to federal agents on October 4, 2019 that she is owed $11,000 by the "john" Jose Torres.

Anna T.'s agreement is to provide Sher Tremonte and co-conspirators with $11,000 in debt of her criminal prostitution business for Sher Tremonte LLP to collect. Anna T. is further in violation of USCS § 2422(a) and

N.J.S.A. 2C:34-1 Promotion of Prostitution, along with Conspiracy to Money Laundering in violation of USCS § 1956(h).

## JUSTIN M. SHER, ESQUIRE: CO-DEFENDANT

Justin Sher is an attorney and co-founding partner of Sher Tremonte LLP. As a co-founding partner of Sher Tremonte LLP, Justin Sher manages all aspects of the firm and would have full knowledge and would have given approval for a venture of this magnitude that would create such a significant impact on the revenues of Sher Tremonte LLP.

Justin Sher directs Noam K. Biale and Anna M. Estevao, attorneys that are employed by Sher Tremonte LLP, in their actions to further the criminal enterprise and creating a new source of revenue in the untapped multi-billion dollar prostitution and sex trafficking industry. Successful penetration of this untapped multi-billion dollar market would further Justin Sher's professional, financial, and reputational benefit to himself and his law firm through the collection of criminal debt and securing the position as the "go to law firm" for the sex trafficking and prostitution industry in the United States.

Justin Sher's RICO conspiratorial agreement is to assist in the collection of debt of criminal activity from the prostitution and sex trafficking industry, namely USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution. This collection of ill-gotten debt of criminal activity is in violation of USCS § 1956(h) Conspiracy to Money Laundering and Title 18 U.S.C.S. 1962(c) and (d). Justin Sher is further in violation of USCS § 2 Aiding and Abetting USCS § 2422(a). Justin Sher continues the criminal enterprise with the above acts and amongst the co-conspirators to the present date of the filing of this complaint.

## MICHAEL TREMONTE, ESQUIRE: CO-DEFENDANT

Michael Tremonte is an attorney and co-founding partner of Sher Tremonte LLP. As a founding partner of Sher Tremonte LLP, Michael Tremonte manages all aspects of the firm and would have full knowledge and would have given approval for a venture of this magnitude that would create such a significant impact on the revenues of Sher Tremonte LLP. All of Michael Tremonte's actions were done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Michael Tremonte directs Noam Biale and Anna Estevao, attorneys that are employed by Sher Tremonte LLP, in their actions to further the criminal enterprise and creating a new source of revenue in the untapped multi-billion dollar prostitution and sex trafficking industry. Successful penetration of this untapped multi-billion dollar market would further Michael Tremonte's professional, financial, and reputational benefit to himself and his law firm through the collection of criminal debt and securing the position as the "go to law firm" for the sex trafficking and prostitution industry in the United States.

Michael Tremonte's RICO conspiratorial agreement is to assist in the collection of debt of criminal activity in the prostitution and sex trafficking industry, namely USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution. This collection of ill-gotten debt of criminal activity is in violation of USCS § 1956(h) Conspiracy to Money Laundering and Title 18 U.S.C.S. 1962(c) and (d). Michael Tremonte is further in violation of USCS § 2 Aiding and Abetting USCS § 2422(a). Michael Tremonte continues the criminal enterprise with the above acts and amongst the co-conspirators to the present date of the filing of this complaint.

## NOAM KORATI BIALE, ESQUIRE: CO-DEFENDANT

Noam Korati Biale is an attorney, founding member, and employee of the law firm of Sher Tremonte LLP. Noam Biale is actively engaged with sourcing and communicating with illegal sex traffickers and prostitutes who need debt collection services derived from their criminal business activities. Noam Biale is involved with the process of signing legal representation agreements with known criminals, prostitutes and sex traffickers. Noam Biale also approves and assists in the posting of internet advertisements and creating deceptive narratives to support the criminal enterprise. All of Noam Biale's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Noam Biale himself further engaged in continuing the criminal enterprise by having ongoing communication with A.U.S.A. Emma S. Spiro to get involved in the conspiracy, as Noam Biale was Emma Spiro's supervisor when Emma Spiro was recently employed by Sher Tremonte LLP. While Emma Spiro's involvement appears to be a clear and direct conflict of interest, Noam Biale's and Emma Spiro's relationship and any secretive agreements that Biale and Spiro may have fuels Emma Spiro to use the power of the federal government to assist in the process of furthering Noam Biale's professional, financial, and reputational benefit to himself and his law firm through the collection of criminal debt and securing the position as the "go to law firm" for the sex trafficking and prostitution industry in the United States. All of Noam Biale's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Noam Biale participated in telephone interviews on October 2, 2019, October 4, 2019, October 30, 2019, November 20, 2019, February 3, 2020, April 22, 2020, May 12, 2020, and September 24, 2020 to name a few of the interviews Noam Biale had with the federal investigators working with and for Emma Spiro, in furtherance of the conspiracy, to initiate a criminal complaint against the first "john" in the scheme. Emma Spiro was also a participant on all of the interviews with the co-conspirators, federal agents, prostitutes, and sex traffickers. All of Noam Biale's actions are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

This criminal complaint against Jose Torres greatly assists Noam Biale in furtherance of the criminal enterprise by attempting to create a conviction that would generate millions in revenue through restitution, civil lawsuits that follow a criminal conviction, and other revenues stemming from representing prostitutes and sex traffickers from similar and/or unrelated civil and criminal matters.

Noam K. Biale's RICO conspiratorial agreement is to assist in the collection of debt of criminal activity, namely USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution. This collection of ill-gotten debt from criminal activity is in violation of USCS § 1956(h) Conspiracy to Money Laundering and Title 18 U.S.C.S. 1962(c) and (d). Noam K. Biale is further in violation of USCS § 2 Aiding and Abetting USCS § 2422(a). Noam Biale continues the criminal enterprise with the above acts and amongst the co-conspirators to the present date of the filing of this complaint.

## ANNA MARIA ESTEVAO, ESQUIRE: CO-DEFENDANT

Anna Maria Estevao is an associate attorney and employee of Sher Tremonte LLP, and co-counsel for the prostitutes who have signed legal representation agreements with Sher Tremonte. Anna Estevao is actively engaged with sourcing and communicating with illegal prostitutes and sex traffickers who need debt collection services derived from their criminal business activities. Anna Estevao was also involved in the interactions related to the posting of internet advertisements to source more prostitutes and sex traffickers who were owed money by

the "john", Jose Torres. All of Anna Estevao's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Anna Estevao participated in telephone interviews on October 2, 2019, October 4, 2019, October 30, 2019, November 20, 2019, February 3, 2020, April 22, 2020, May 12, 2020, and September 24, 2020 to name a few of the interviews Anna Estevao had with the federal investigators working with and for Emma Spiro, in furtherance of the conspiracy, to initiate a criminal complaint against the first "john" in the scheme. Emma Spiro was also a participant in the interviews with the federal agents. This criminal complaint greatly assists Anna Estevao in furtherance of the criminal enterprise by attempting to create a conviction that would generate revenue through restitution, civil lawsuits that generally follow a criminal conviction, and other revenues stemming from representing prostitutes and sex traffickers from similar and/or unrelated civil and criminal matters. All of Anna Estevao's actions are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Successful penetration of the untapped multi-billion prostitution and sex trafficking market would further Anna Estevao's professional, financial, and reputational benefit to herself and her law firm through the collection of criminal debt. Successful penetration of this market would also secure Sher Tremonte a position as the "go to law firm" for the sex trafficking and prostitution industry in the United States.

Anna Estevao's RICO conspiratorial agreement is to assist in the collection of debt derived from criminal activity, namely USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution. This collection of ill-gotten debt of criminal activity is in violation of USCS § 1956(h) Conspiracy to Money Laundering and Title 18 U.S.C.S. 1962(c) and (d). Anna Estevao is further in violation of USCS § 2 Aiding and Abetting USCS § 2422(a). Anna Estevao continues the criminal enterprise with the above acts and amongst the co-conspirators to the present date of the filing of this complaint.

## **TORE IKELAND LAW PLLC: CO-DEFENDANT**

Tore Ikeland Law PLLC is a law firm located at 30 Wall Street, New York, New York. Tore Ikeland Law PLLC signed a legal representation agreement with a sex trafficker named "Sarah P." who Torres engaged in prostitution with sometime in December 2015. All of Tore Ikeland Law PLLC's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Tore Ikeland Law PLLC, as a law firm, must review and approve all new clients and check for legal pitfalls, such as not engaging in the collection of unlawful debt derived from criminal activity. However, Tore Ikeland Law PLLC knowingly bypassed this legal pitfall and knowingly engaged in the conspiracy to represent prostitutes and sex traffickers to collect unlawful debt derived from criminal activity. All of Tore Ikeland Law PLLC's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

"Sarah P." refers prostitutes to "johns" and makes income off of her trafficking of other prostitutes. Sarah P. referred "Lindsay R." and "Anant S." to the given "john" Jose Torres to engage in an overnight prostitution date with Torres on December 9th and December 10th, 2015, respectively.

Tore Ikeland Law PLLC's agreement is to assist in the collection of debt derived from criminal activity, namely USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution. This collection of ill-gotten debt from criminal activity is in violation of USCS § 1956(h) Conspiracy to Money Laundering and in violation of Title 18 U.S.C.S. 1962(d). Tore Ikeland Law PLLC is further in violation of USCS § 2 Aiding and Abetting USCS §

2422(a). Tore Ikeland Law PLLC continues the criminal enterprise with the above acts and amongst the co-conspirators to the present date of the filing of this complaint.

Successful penetration of this untapped multi-billion dollar market would further Tore Ikeland Law PLLC's financial and reputational benefit through the collection of criminal debt derived from illegal sex acts and securing the position as a "go to law firm" for the sex trafficking and prostitution industry in the United States.

## Sher Tremonte signed a legal representation agreement with sex trafficker, "SARAH P.", to collect criminal debt derived from her illegal sex trafficking and prostitution business

"Sarah P." signed a legal representation agreement with co-conspirator Tore Ikeland Law PLLC in or around November 4, 2019 to assist in the collection of criminal debt. This debt would be collected through the CVRA and MVRA restitution as long as "Sarah P." assists in the prosecution of the first "john" that was targeted. Further revenue is to be generated by subsequent lawsuits that would follow after a criminal conviction of the given "john" and from other sex traffickers and prostitutes that may need the collection of illegal debt. All of Tore Ikeland Law PLLC's actions are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Sex Trafficker "Sarah P." is engaged in illegal prostitution in violation of USCS 2422(a) punishable by a term of up to 20 years imprisonment, along with N.J.S.A. 2C:34-1 Promotion of Prostitution in the 2nd degree, punishable by a term of 5 to 10 years. Evidence within the case of United States v. Torres (Case #: 20-CR-418 BRM) provides clear and convincing evidence that "Sarah P." had committed the criminal elements in violation of these statutes.

"Sarah P." posted sexually explicit internet advertisements on eros.com to solicit "johns" for her sex trafficking and prostitution business. "Sarah P." further trafficked other women, including "Lindsay R." and "Anant S.". Evidence within the Torres case confirms that Sarah P. promoted sex acts that occurred in the State of New Jersey with prostitutes who traveled from New York State to do so. Lindsay R. is not listed on this complaint as Lindsay R. is not a defendant in this federal civil RICO lawsuit nor is Lindsay R represented by a law firm (or attorney), co-defendant.

In a statement made on September 24, 2020 to federal investigators by "Anant" aka "AK' : "AK stated that she was told by Sarah that a man in New Jersey was paying a lot of money for the company of women. AK stated that based on what Sarah P. told her about Torres being a "unicorn" client and how she had spent several nights with Torres and Torres' desire to hire other women and pay a lot of money."

"Sarah P." is currently promoting her sex trafficking and prostitution business through eros.com and/or tryst.com.

"Sarah P." made statements to federal agents on November 24th, 2020 that she is owed "a large sum of money" by the "john" Jose Torres.

Sarah P.'s agreement is to provide Tore Ikeland Law PLLC and co-conspirators with debt collection of her criminal prostitution business. Sarah P. is further in violation of USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution, along with Conspiracy to Money Laundering in violation of USCS § 1956(h).

## TORE IKELAND, ESQUIRE:  CO-DEFENDANT

Tore Ikeland is an attorney and managing partner of Tore Ikeland Law PLLC.  Tore Ikeland is involved with the process of signing a legal representation agreement with the known sex trafficker, "Sarah P.".  Given that Tore Ikeland is an experienced attorney and managing partner of Tore Ikeland Law PLLC, Tore Ikeland certainly knows that he is involved in a criminal conspiracy, the collection of unlawful debt derived from criminal activities, illegal prostitution, and sex trafficking business.  All of Tore Ikeland Law's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Tore Ikeland participated in at least one telephone interview on November, 24, 2020 with the federal investigators working with and for A.U.S.A. Emma Spiro, in furtherance of the conspiracy, and the scheme against the "john" Jose Torres.  This criminal complaint greatly assists Tore Ikeland in furthering the criminal enterprise by attempting to create a conviction that would generate revenues through subsequent restitution and further bolster civil lawsuits that generally follow after a criminal conviction.  All of Tore Ikeland's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Tore Ikeland and his law firm Tore Ikeland Law PLLC joined the conspiracy to attempt to penetrate the untapped multi-billion dollar prostitution and sex trafficking market in the United States.  Success penetration of this market would further Tore Ikeland's financial, professional, and reputational benefit through the collection of criminal debt derived from illegal sex acts and would also secure Tore Ikeland Law PLLC a position as a "go to law firm" for the sex trafficking and prostitution industry in the United States.

Tore Ikeland's RICO conspiratorial agreement is to assist in the collection of debt derived from criminal activity, namely USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution.  This collection of ill-gotten debt from criminal activity derived from sex trafficking and/or prostitution is in violation of USCS § 1956(h) Conspiracy to Money Laundering and Title 18 U.S.C.S. 1962(d).  Tore Ikeland is further in violation of USCS § 2 Aiding and Abetting USCS § 2422(a).  Tore Ikeland continues the criminal enterprise with the above acts and amongst the co-conspirators to the present date of the filing of this complaint.

## JESSICA COONROD, ESQUIRE: CO-DEFENDANT

Jessica Coonrod is an associate attorney and worked under Tore Ikeland's direction until January 2021.  Similar to Tore Ikeland, Jessica Coonrod was involved with the process of signing a legal representation agreement with the known trafficker, Sarah P.  Jessica Coonrod certainly knows that she was involved in a criminal conspiracy, the collection of unlawful debt derived from her criminal business activities, illegal prostitution and sex trafficking business.  All of Jessica Coonrod's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Through Tore Ikeland, Jessica Coonrod joined the conspiracy to attempt to penetrate the untapped multi-billion dollar prostitution and sex trafficking market in the United States.  A successful penetration of this new market would have furthered Jessica Coonrod's professional, financial, and reputational benefit through the collection of criminal debt derived from illegal sex acts and would have secured Tore Ikeland PLLC as a "go to law firm" for the sex trafficking and prostitution industry in the United States.

Jessica Coonrod's RICO conspiratorial agreement is to assist in the collection of debt of criminal activity, namely USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution.  This collection of ill-gotten debt from criminal activity is in violation of USCS § 1956(h) Conspiracy to Money Laundering and Title 18 U.S.C.S. 1962(d).  Jessica Coonrod is further in violation of USCS § 2 Aiding and Abetting USCS § 2422(a).

**ARGENTINO, FIORE LAW ADVOCACY LLC: CO-DEFENDANT**

Argentino, Fiore Law Advocacy LLC is a family law firm located at 50 Church Street, Suite 106, Montclair, NJ 07042. Argentino, Fiore Law Advocacy signed a legal representation agreement with a prostitute by the name of "Anant S.", a prostitute referred to Jose Torres by the sex trafficker Sarah P. "Anant S." is a prostitute who is in violation of 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution. All of Argentino, Fiore Law Advocacy LLC's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Argentino, Fiore Law Advocacy LLC's RICO conspiratorial agreement is to assist in the collection of debt from criminal activity, namely USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution. This collection of ill-gotten debt derived from criminal activity is in violation of USCS § 1956(h) Conspiracy to Money Laundering and Title 18 U.S.C.S. 1962(d). Argentino, Fiore Law Advocacy LLC is further in violation of USCS § 2 Aiding and Abetting USCS § 2422(a). Argentino, Fiore Law Advocacy LLC continues the criminal enterprise with the above acts and amongst the co-conspirators to the present date of the filing of this complaint.

**Sher Tremonte signed a legal representation agreement with prostitute, "ANANT S." aka AK, to collect criminal debt derived from her illegal prostitution business**

"Anant S." signed a legal representation agreement with co-conspirators Argentino, Fiore Law Advocacy LLC and Frank Morano in or around September 24, 2020 to assist in the collection of criminal debt derived from prostitution. This debt would be collected through the CVRA and MVRA restitution as long as "Anant S." assists in the prosecution of the first "john" that was targeted. Further revenue is expected to be generated by Argentino, Fiore Law Advocacy by subsequent lawsuits that generally follow after a criminal conviction. All of Argentino, Fiore Law Advocacy's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Prostitute Anant S. aka "AK" is still engaged in the illegal prostitution business in violation of USCS 2422(a) punishable by a term of up to 20 years imprisonment, along with N.J.S.A. 2C:34-1 Promotion of Prostitution in the 2nd degree, punishable by a term of 5 to 10 years. Evidence within the case of United States v. Torres (Case #: 20-CR-418 BRM) provides clear and convincing evidence that "Anant S." had committed the criminal elements in violation of these statutes.

"Anant S." was sent by a sex trafficker by the name of "Sarah P." to meet with the "john" Jose Torres for her illegal prostitution business that was advertised on eros.com. Evidence within the Torres case confirms that "Anant S." performed sex acts within the State of New Jersey and traveled from New York to do so. Anant S.'s travel was paid by Sarah P., the sex trafficker.

"Anant S." made a statement to federal agents on September 24, 2020 that she made a Facebook posting on December 11, 2015 and informed her friends through Facebook about the given "john" and his financial debt to her and warned others involved in criminal prostitution or trafficking to not get "victimized" by the "john". In Anant's statement on September 24, 2020, Anant S. stated that she made a Facebook post stating:

> "Can you folks call [the hotel] saying that they know a serial rapist stayed on the 12th floor of the hotel last night and they want the hotel to initiate an investigation against him. Please don't mention my name. You can call from wherever even if you're not near New Jersey and feel free to block your number or hang up mid call or whatever because the message will come across to them regardless. They've already received about a half dozen calls

and seems like they may be taking some action so please keep it coming by making a quick call and telling your friends." Anant states that others then re-shared and circulated the post requesting these deceptive phone calls be made.

This shows the mindset of these prostitutes and traffickers as the above statement makes it crystal clear that they are willing to create bald false allegations of rape and violence in order to attempt to collect their criminal debt.

Anant S. additionally stated to the Government that she is owed "a large sum of money", by the given "john" but "does not know the amount."

Anant's agreement is to provide Argentino, Fiore Law Advocacy LLC and co-conspirators with debt derived from her criminal prostitution business for co-conspirators to collect. Anant S. is further in violation of USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution, along with Conspiracy to Money Laundering in violation of USCS § 1956(h).

## JODI ARGENTINO, ESQUIRE: CO-DEFENDANT

Jodi Argentino is an attorney and managing partner of Argentino, Fiore Law Advocacy LLC. As a managing partner of Argentino, Fiore Law Advocacy LLC, Jodi Argentino manages all aspects of the firm and would have full knowledge and would have given approval for a venture of this magnitude that could potentially create such a significant impact on the revenues and customer base of Argentino, Fiore Law Advocacy LLC. All of Jodi Argentino's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Jodi Argentino directs Frank Morano, an attorney and employee of the firm, in the firm's actions to further the criminal enterprise and creating a new source of revenue in the untapped multi-billion dollar prostitution and sex trafficking industry. Successful penetration of this untapped multi-billion dollar market would further Jodi Argentino's professional, financial, and reputational benefit to herself and her law firm through the collection of criminal debt and also secure Argentino, Fiore Law Advocacy LLC a position as a "go to law firm" for the sex trafficking and prostitution industry. All of Jodi Argentino's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Jodi Argentino's RICO conspiratorial agreement is to assist in the collection of debt from criminal activity derived from the prostitution and sex trafficking industry, namely USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution. This collection of ill-gotten debt of criminal activity is in violation of USCS § 1956(h) Conspiracy to Money Laundering and Title 18 U.S.C.S. 1962(d). Jodi Argentino is further in violation of USCS § 2 Aiding and Abetting USCS § 2422(a). Jodi Argentino continues the criminal enterprise with the above acts and amongst the co-conspirators to the present date of the filing of this complaint.

## CELESTE FIORE, ESQUIRE: CO-DEFENDANT

Celeste Fiore is an attorney and managing partner of Argentino, Fiore Law Advocacy LLC. As a managing partner of Argentino, Fiore Law Advocacy LLC, Celeste Fiore manages all aspects of the firm and would have full knowledge and would have given approval for a venture of this magnitude that could potentially create such a significant impact on the revenues and customer base of Argentino, Fiore Law Advocacy LLC. All of Celeste

Case 2:22-cv-04662-MCA-CLW   Document 1   Filed 07/20/22   Page 18 of 34 PageID: 18

Page **18** of **33**

Fiore's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Celeste Fiore directs Frank Morano, an attorney and employee of the firm, in the firm's actions to further the criminal enterprise and creating a new source of revenue in the multi-billion dollar prostitution and sex trafficking industry. Successful penetration of this untapped multi-billion dollar market would further Celeste Fiore's professional, financial, and reputational benefit to herself and her law firm through the collection of criminal debt and securing the position as a "go to law firm" for the sex trafficking and prostitution industry.

Celeste Fiore's RICO conspiratorial agreement is to assist in the collection of debt of criminal activity in the prostitution and sex trafficking industry, namely USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution. This collection of ill-gotten debt of criminal activity is in violation of USCS § 1956(h) Conspiracy to Money Laundering and Title 18 U.S.C.S. 1962(d). Celeste Fiore is further in violation of USCS § 2 Aiding and Abetting USCS § 2422(a). Celeste Fiore continues the criminal enterprise with the above acts and amongst the co-conspirators to the present date of the filing of this complaint.

## FRANK MORANO, ESQUIRE: CO-DEFENDANT

Frank Morano is an experienced attorney and employee of Argentino, Fiore Advocacy LLC. Frank Morano is involved with the process of signing a legal representation agreement with the known prostitute, "Anant S." who saw Torres on November 18, 2015 for an overnight outcall. All of Frank Morano's actions are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Frank Morano participated in telephone interviews on September 24, 2020 and October 16, 2020 with the federal investigators working with and for Emma Spiro, in furtherance of the conspiracy, to add to a criminal complaint against the first "john" in their scheme. This criminal complaint greatly assists Frank Morano and Argentino, Fiore Law Advocacy LLC in furtherance of the criminal enterprise by attempting to create a conviction that would produce revenue through restitution, civil lawsuit(s) that generally follow a criminal conviction and from other revenues stemming from representing other prostitutes and sex traffickers from similar and/or unrelated civil and criminal matters. All of Frank Morano's actions were/are done willfully, intentionally, and maliciously with the intent to harm the plaintiff, Jose Torres.

Frank Morano joined the conspiracy to create financial, professional, and reputation benefits to himself and his law firm through the collection of criminal debt. A successful conviction would secure Argentino, Fiore Law Advocacy LLC the position as a "go to law firm" for the sex trafficking and prostitution industry. This could significantly increase the revenues of Argentino, Fiore Law Advocacy LLC, change the firm's financial position and customer base.

Frank Morano's RICO conspiratorial agreement is to assist in the collection of debt derived from criminal activity, namely USCS § 2422(a) and N.J.S.A. 2C:34-1 Promotion of Prostitution. This collection of ill-gotten debt derived from criminal activity is in violation of USCS § 1956(h) Conspiracy to Money Laundering and Title 18 U.S.C.S. 1962(d). Frank Morano is further in violation of USCS § 2 Aiding and Abetting USCS § 2422(a). Frank Morano continues the criminal enterprise with the above acts and amongst the co-conspirators to the present date of the filing of this complaint.

**(c)  Differences** - Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity, and discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

The activities of the enterprise include the promotion of prostitution and sex trafficking sex services. The activities also include the collection of illegal debt from criminal activities. Co-conspirators are legitimate law firms and attorneys attempting to launder money through the collection of unlawful debt. This expanding criminal enterprise's goal is to open up a new untapped multi-billion dollar market of potential clients thereby creating a new revenue source for the co-conspirators.

The enterprises' activities include the utilization of business relationships with a former employee Emma S. Spiro to initiate criminal charges against the first "john" to assist in the recovery of unlawful money. The enterprise also uses the Sex Workers Outreach Program to recruit more clients and expand their enterprise. To promote their services, the enterprise also use internet posts and referrals to recruit new clients, prostitutes and sex traffickers.

These law firms present themselves as legitimate law firms while they are attempting to collect criminal debt derived from the prostitution and sex trafficking industry utilizing legal services representation agreements.

**(d)  Benefits received** - Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.

All of the enterprises co-conspirators are law firms and attorneys who have a significant upside for their ongoing racketeering activities. Their upside includes, financial, professional and reputational benefits to the law firms as well as to the attorneys representing the prostitutes and sex trafficker(s).

Criminal bad debt is an enormous problem in the multi-billion dollar illegal sex trafficking and prostitution industry. Even a small share of this business for law firms like Sher Tremonte LLP, Tore Ikeland Law PLLC, and Argentino, Fiore Law Advocacy LLC could easily double or triple their annual revenues and related net profits.

The enterprise makes agreements with sex traffickers and prostitutes who gain the benefit of the collection of their criminal debt, along with the restitution they hope to win via the Crime Victims' Rights Act (CVRA) and/or the Mandatory Victims Restitution Act (MVRA), upon getting former Sher Tremonte LLP employee and current A.U.S.A. Emma Spiro her first conviction of a "john", which could be the first "john" convicted in the 112 year history of the 2422(a) Mann Act statute. This conviction would then open the floodgates for more prosecutions of "johns" who would be funneled from Sher Tremonte, Tore Ikeland Law PLLC, and Argentino, Fiore Law Advocacy LLC to A.U.S.A. Emma Spiro.

This Criminal Enterprise is all the more interesting as the collection activity is done at the expense of United States federal taxpayers with the cost, investigation, and legwork of the FBI, DHS, and the United States Attorneys' Office for the District of New Jersey.

**(e) Documents** - if this allegation is based upon any documents obtained from any source, identify these documents.

Extensive documentation and evidence of the racketeering activities by the co-conspirators are available within the discovery evidence of United States v. Torres (Case #: 20-CR-418 BRM). This evidence can be made available by court order within this RICO case. Exhibits are not attached to this complaint because most of Torres' key discovery evidence is under a protective order.

Specific documents cited, to name a few, include references to the following discovery:

1. Lindsey B. - DHS Report of 11/20/2019 interview
2. Lindsey B. - DHS Report of 2/3/2020 interview
3. Lindsey B. - New Brunswick, NJ Police Report 6/1/2015
4. Lindsey B. - Las Vegas Police Report 6/1/2015
5. Katherine L. - Calls to and from J.T. 10/19/2020 – 10/19/2020
6. Katherine L. - DHS Report of 10/30/2019 interview
7. Katherine L. - DHS Report of 2/3/2020 interview
8. Chelsea L. - "Dorothy Gale" Eros prostitution ad
9. Chelsea L. - Calls to and from J.T. 5/20/2020 & 5/21/2020
10. Chelsea L. - DHS Report of 10/4/2019 interview
11. Chelsea L. - DHS Report of 4/22/2020 interview
12. Chelsea L. - DHS Report of 5/12/2020 interview
13. Anant S. - 302 Report of 9/24/2020 interview
14. Anant S. - DHS Report of 9/24/2020 interview
15. Anant S. - 302 Report of 10/16/2020 interview
16. Anant S. - J.T. calls to and from Sarah P. 12/9/2015 – 12/10/2015
17. Anant S. - A.S. calls to and from Sarah P.
18. Anant S. - J.T calls to and from Anant S.
19. Anant S. - East Brunswick, NJ Police Report, 12/11/2015
20. Anant S. - Supplemental East Brunswick, NJ Police Report, 12/11/2015
21. Anna T. - 302 Report of 8/31/2020 interview
22. Anna T. - J.T. emails and text messages with Anna T. from 11/17/2020 – 11/18/2020
23. Anna T. - 11/19/2015 Kings County (Brooklyn, NY) Hospital Report
24. Anna T. - 11/18/2015 J.T. Hilton Hotel Room Receipt
25. Anna T. - J.T. TD Bank, Hilton Hotel debit, 11/18/2015
26. Sarah P. - DHS Report of 11/9/2020 interview
27. Sarah P. - DHS Report of 11/24/2020 interview
28. Abigail - DHS Report interview (bate # 36755R – 36757R)
29. Allison – DHS Report of 10/2/2019 interview

The above is an abbreviated list of documents referred to in this federal civil RICO complaint.

**(f) Statutes** - the specific statutes which are violated.

Statutes violated by co-defendants include, but are not limited to:

------------------------------------------------------------------------------------------------------------------------

(f)(1) Federal Statute: 2422(a). Coercion and enticement (a) Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the

United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

(f)(2) Federal Statute: USCS § 2 Aiding and Abetting violation of USCS § 2422(a)

### § 2. Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

(f)(3) New Jersey Statute: N.J.S.A. 2C:34-1 Promotion of Prostitution
2C:34-1.  Prostitution and related offenses
a. As used in this section:

(1) Prostitution is sexual activity with another person in exchange for something of economic value, or the offer or acceptance of an offer to engage in sexual activity in exchange for something of economic value.

(2) Sexual activity includes, but is not limited to, sexual intercourse, including genital-genital, oral-genital, anal-genital, and oral-anal contact, whether between persons of the same or opposite sex; masturbation; touching of the genitals, buttocks, or female breasts; sadistic or masochistic abuse and other deviate sexual relations.

(3) House of prostitution is any place where prostitution or promotion of prostitution is regularly carried on by one person under the control, management or supervision of another.

(4) Promoting prostitution is:

(a) Owning, controlling, managing, supervising or otherwise keeping, alone or in association with another, a house of prostitution or a prostitution business;

(b) Procuring an inmate for a house of prostitution or place in a house of prostitution for one who would be an inmate;

(c) Encouraging, inducing, or otherwise purposely causing another to become or remain a prostitute;

(d) Soliciting a person to patronize a prostitute;

(e) Procuring a prostitute for a patron;

(f) Transporting a person into or within this State with purpose to promote that persons engaging in prostitution, or procuring or paying for transportation with that purpose; or

(g) Knowingly leasing or otherwise permitting a place controlled by the actor, alone or in association with others, to be regularly used for prostitution or promotion of prostitution, or failure to make a reasonable effort to abate such use by ejecting the tenant, notifying law enforcement authorities, or other legally available means.
-------------------------------------------------------------------------------------------------------------------

(f)(4) Federal Statute: USCS 1956(h) Conspiracy to Money Laundering
1956.  Laundering of monetary instruments

(a) (1) Whoever, knowing that the property involved in a financial transaction represents t1e proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity

(A) (i) with the intent to promote the carrying on of specified unlawful activity; or

(ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986 [26 USCS 7201 or 7206]; or

(B) knowing that the transaction is designed in whole or in part

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law, shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financ al transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States

(A) with the intent to promote the carrying on of specified unlawful activity; or

(B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater, or imprisonment for not more than twenty years, or both. For the purpose of the offense described in subparagraph (B), the defendants knowledge may be established by proof that a law enforcement officer represented the matter specified in subparagraph (B) as true, and the defendants subsequent statements or actions indicate that the defendant believed such representations to be true.

(3) Whoever, with the intent

(A) to promote the carrying on of specified unlawful activity;

(B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or

(C) to avoid a transaction reporting requirement under State or Federal law, conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term represented means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

(b) Penalties.

(1) In general. Whoever conducts or attempts to conduct a transaction described in subsection (a)(1) or (a)(3), or section 1957 [18 USCS 1957], or a transportation, transmission, or transfer described in subsection (a)(2), is liable to the United States for a civil penalty of not more than the greater of

(A) the value of the property, funds, or monetary instruments involved in the transaction; or

(B) $10,000.

(2) Jurisdiction over foreign persons. For purposes of adjudicating an action filed or enforcing a penalty ordered under this section, the district courts shall have jurisdiction over any foreign person, including any financial institution authorized under the laws of a foreign country, against whom the action is brought, if service of process upon the foreign person is made under the Federal Rules of Civil Procedure or the laws of the country in which the foreign person is found, and

(A) the foreign person commits an offense under subsection (a) involving a financial transaction that occurs in whole or in part in the United States;

(B) the foreign person converts, to his or her own use, property in which the United States has an ownership interest by virtue of the entry of an order of forfeiture by a court of the United States; or

(C) the foreign person is a financial institution that maintains a bank account at a financial institution in the United States.

(3) Court authority over assets. A court may issue a pretrial restraining order or take any other action necessary to ensure that any bank account or other property held by the defendant in the United States is available to satisfy a judgment under this section.

(4) Federal receiver.

(A) In general. A court may appoint a Federal Receiver, in accordance with subparagraph (B) of this paragraph, to collect, marshal, and take custody, control, and possession of all assets of the defendant, wherever located, to satisfy a civil judgment under this subsection, a forfeiture judgment under section 981 or 982 [18 USCS 981 or 982], or a criminal sentence under section 1957 [18 USCS 1957] or subsection (a) of this section, including an order of restitution to any victim of a specified unlawful activity.

(B) Appointment and authority. A Federal Receiver described in subparagraph (A)

(i) may be appointed upon application of a Federal prosecutor or a Federal or State regulator, by the court having jurisdiction over the defendant in the case;

(ii) shall be an officer of the court, and the powers of the Federal Receiver shall include the powers set out in section 754 of title 28, United States Code; and

(iii) shall have standing equivalent to that of a Federal prosecutor for the purpose of submitting requests to obtain information regarding the assets of the defendant

(I) from the Financial Crimes Enforcement Network of the Department of the Treasury; or

(II) from a foreign country pursuant to a mutual legal assistance treaty, multilateral agreement, or other arrangement for international law enforcement assistance, provided that such requests are in accordance with the policies and procedures of the Attorney General.

(c) As used in this section

(1) the term knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7);

(2) the term conducts includes initiating, concluding, or participating in initiating, or concluding a transaction;

(3) the term transaction includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition, and with respect to a financial institution includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected;

Case 2:22-cv-04662-MCA-CLW   Document 1   Filed 07/20/22   Page 24 of 34 PageID: 24

(4) the term financial transaction means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree;

(5) the term monetary instruments means (i) coin or currency of the United States or of any other country, travelers checks, personal checks, bank checks, and money orders, or (ii) investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery;

(6) the term financial institution includes

(A) any financial institution, as defined in section 5312(a)(2) of title 31, United States Code, or the regulations promulgated thereunder; and

(B) any foreign bank, as defined in section 1 of the International Banking Act of 1978 (12 U.S.C. 3101);

(7) the term specified unlawful activity means

(A) any act or activity constituting an offense listed in section 1961(1) of this title [18 USCS 1961(1)] except an act which is indictable under subchapter II of chapter 53 of title 31 [31 USCS 5311 et seq.];

(B) with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving

(i) the manufacture, importation, sale, or distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act);

(ii) murder, kidnapping, robbery, extortion, destruction of property by means of explosive or fire, or a crime of violence (as defined in section 16 [18 USCS 16]);

(iii) fraud, or any scheme or attempt to defraud, by or against a foreign bank (as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978 [12 USCS 3101(7)])[)];

(iv) bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official;

(v) smuggling or export control violations involving

(I) an item controlled on the United States Munitions List established under section 38 of the Arms Export Control Act (22 U.S.C. 2778); or

(II) an item controlled under regulations under the Export Administration Regulations (15 C.F.R. Parts 730774);

(vi) an offense with respect to which the United States would be obligated by a multilateral treaty, either to extradite the alleged offender or to submit the case for prosecution, if the offender were found within the territory of the United States; or

(vii) trafficking in persons, selling or buying of children, sexual exploitation of children, or transporting, recruiting or harboring a person, including a child, for commercial sex acts;

(C) any act or acts constituting a continuing criminal enterprise, as that term is defined in section 408 of the Controlled Substances Act (21 U.S.C. 848);

(D) an offense under section 32 [18 USCS 32] (relating to the destruction of aircraft), section 37 [18 USCS 37] (relating to violence at international airports), section 115 [18 USCS 115] (relating to influencing, impeding, or retaliating against a Federal official by threatening or injuring a family member), section 152 [18 USCS 152] (relating to concealment of assets; false oaths and claims; bribery), section 175c [18 USCS 175c] (relating to the variola virus), section 215 [18 USCS 215] (relating to commissions or gifts for procuring loans) section 351 [18 USCS 351] (relating to congressional or Cabinet officer assassination), any of sections 500 through 503 [18 USCS 500 through 503] (relating to certain counterfeiting offenses), section 513 [18 USCS 513] (relating to securities of States and private entities), section 541 [18 USCS 541] (relating to goods falsely classified), section 542 [18 USCS 542] (relating to entry of goods by means of false statements), section 545 [18 USCS 545] (relating to

smuggling goods into the United States), section 555 [18 USCS 555] (relating to border tunnels), section 549 [18 USCS 549] (relating to removing goods from Customs custody), section 554 [18 USCS 554] (relating to smuggling goods from the United States), section 641 [18 USCS 641] (relating to public money, property, or records), section 656 [18 USCS 656] (relating to theft, embezzlement, or misapplication by bank officer or employee), section 657 [18 USCS 657] (relating to lending, credit, and insurance institutions), section 658 [18 USCS 658] (relating to property mortgaged or pledged to farm credit agencies), section 666 [18 USCS 666] (relating to theft or bribery concerning programs receiving Federal funds), section 793, 794, or 798 [18 USCS 793, 794, or 798] (relating to espionage), section 831 [18 USCS 831] (relating to prohibited transactions involving nuclear materials), section 844 (f) or (i) [18 USCS 844(f) or (i)] (relating to destruction by explosives or fire of Government property or property affecting interstate or foreign commerce), section 875 [18 USCS 875] (relating to interstate communications), section 922(1) [18 USCS 922(1)] (relating to the unlawful importation of firearms), section 924(n) [18 USCS 924(n)] (relating to firearms trafficking), section 956 [18 USCS 956] (relating to conspiracy to kill, kidnap, maim, or injure certain property in a foreign country), section 1005 [18 USCS 1005] (relating to fraudulent bank entries), [section] 1006 [18 USCS 1006] (relating to fraudulent Federal credit institution entries), [section] 1007 [18 USCS 1007] (relating to Federal Deposit Insurance transactions), [section] 1014 [18 USCS 1014] (relating to fraudulent loan or credit applications), section 1030 [18 USCS 1030] (relating to computer fraud and abuse), [section] 1032 [18 USCS 1032] (relating to concealment of assets from conservator, receiver, or liquidating agent of financial institution), section 1111 (relating to murder), section 1114 [18 USCS 1114] (relating to murder of United States law enforcement officials), section 1116 [18 USCS 1116] (relating to murder of foreign officials, official guests, or internationally protected persons), section 1201 [18 USCS 1201] (relating to kidnaping), section 1203 [18 USCS 1202] (relating to hostage taking), section 1361 [18 USCS 1361] (relating to willful injury of Government property), section 1363 [18 USCS 1363] (relating to destruction of property within the special maritime and territorial jurisdiction), section 1708 [18 USCS 1708] (theft from the mail), section 1751 [18 USCS 1751] (relating to Presidential assassination), section 2113 or 2114 [18 USCS 2113 or 2114] (relating to bank and postal robbery and theft), section 2252A [18 USCS 2252A] (relating to child pornography) where the child pornography contains a visual depiction of an actual minor engaging in sexually explicit conduct, section 2260 [18 USCS 2260] (production of certain child pornography for importation into the United States), section 2280 [18 USCS 2280] (relating to violence against maritime navigation), section 2281 [18 USCS 2281] (relating to violence against maritime fixed platforms), section 2319 [18 USCS 2319] (relating to copyright infringement), section 2320 [18 USCS 2320] (relating to trafficking in counterfeit goods and services), section 2332 [18 USCS 2332] (relating to terrorist acts abroad against United States nationals), section 2332a [18 USCS 2332a] (relating to use of weapons of mass destruction), section 2332b [18 USCS 2332b] (relating to international terrorist acts transcending national boundaries), section 2332g (relating to missile systems designed to destroy aircraft), section 2332h (relating to radiological dispersal devices), section 2339A or 2339B [18 USCS 2339A or 2339B] (relating to providing material support to terrorists), section 2339C [18 USCS 2339C] (relating to financing of terrorism), or section 2339D [18 USCS 2339D] (relating to receiving military-type training from a foreign terrorist organization) of this title, section 46502 of title 49, United States Code, a felony violation of the Chemical Diversion and Trafficking Act of 1988 (relating to precursor and essential chemicals), section 590 of the Tariff Act of 1930 (19 U.S.C. 1590) (relating to aviation smuggling), section 422 of the Controlled Substances Act [21 USCS 863] (relating to transportation of drug paraphernalia), section 38(c) (relating to criminal violations) of the Arms Export Control Act [22 USCS 2778(c)], section 11 (relating to violations) of the Export Administration Act of 1979 [50 USCS Appx. 2410], section 206 (relating to penalties) of the International Emergency Economic Powers Act [50 USCS 1705], section 16 (relating to offenses and punishment) of the Trading with the Enemy Act [50 USCS Appx 16], any felony violation of section 15 of the Food and Nutrition Act of 2008 [7 USCS 2024] (relating to supplemental nutrition assistance program benefits fraud) involving a quantity of benefits having a value of not less than $5,000, any violation of section 543(a)(1) of the Housing Act of 1949 [42 USCS 1490s(a)(1)] (relating to equity skimming), any felony violation of the Foreign Agents Registration Act of 1938 [22 USCS 611 et seq.], any felony violation of the Foreign Corrupt Practices Act, section 92 of the Atomic Energy Act of 1954 (42 U.S.C. 2122) (relating to prohibitions governing atomic weapons), or

section 104(a) of the North Korea Sanctions Enforcement Act of 2016 [22 USCS 9214(a)] (relating to prohibited activities with respect to North Korea);

(E) Environmental Crimes. a felony violation of the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.), the Ocean Dumping Act (33 U.S.C. 1401 et seq.), the Act to Prevent Pollution from Ships (33 U.S.C. 1901 et seq.), the Safe Drinking Water Act (42 U.S.C. 300f et seq.), or the Resources Conservation and Recovery Act (42 U.S.C. 6901 et seq.);

(F) any act or activity constituting an offense involving a Federal health care offense; or

(G) any act that is a criminal violation of subparagraph (A), (B), (C), (D), (E), or (F) of paragraph (1) of section 9(a) of the Endangered Species Act of 1973 (16 U.S.C. 1538(a)(1)), section 2203 of the African Elephant Conservation Act (16 U.S.C. 4223), or section 7(a) of the Rhinoceros and Tiger Conservation Act of 1994 (16 U.S.C. 5305a(a)), if the endangered or threatened species of fish or wildlife, products, items, or substances involved in the violation and relevant conduct, as applicable, have a total value of more than $10,000;

(8) the term State includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and

(9) the term proceeds means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.

(d) Nothing in this section shall supersede any provision of Federal, State, or other law imposing criminal penalties or affording civil remedies in addition to those provided for in this section.

(e) Violations of this section may be investigated by such components of the Department of Justice as the Attorney General may direct, and by such components of the Department of the Treasury as the Secretary of the Treasury may direct, as appropriate, and, with respect to offenses over which the Department of Homeland Security has jurisdiction, by such components of the Department of Homeland Security as the Secretary of Homeland Security may direct, and, with respect to offenses over which the United States Postal Service has jurisdiction, by the Postal Service. Such authority of the Secretary of the Treasury, the Secretary of Homeland Security, and the Postal Service shall be exercised in accordance with an agreement which shall be entered into by the Secretary of the Treasury, the Secretary of Homeland Security, the Postal Service, and the Attorney General. Violations of this section involving offenses described in paragraph (c)(7)(E) may be investigated by such components of the Department of Justice as the Attorney General may direct, and the National Enforcement Investigations Center of the Environmental Protection Agency.

(f) There is extraterritorial jurisdiction over the conduct prohibited by this section if

(1) the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and

(2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.

(g) Notice of conviction of financial institutions.   If any financial institution or any officer, director, or employee of any financial institution has been found guilty of an offense under this section, section 1957 or 1960 of this title [18 USCS 1957 or 1960], or section 5322 or 5324 of title 31, the Attorney General shall provide written notice of such fact to the appropriate regulatory agency for the financial institution.

(h) Any person who conspires to commit any offense defined in this section or section 1957 [18 USCS 1957] shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

(i) Venue.

(1) Except as provided in paragraph (2), a prosecution for an offense under this section or section 1957 [18 USCS 1957] may be brought in

(A) any district in which the financial or monetary transaction is conducted; or

(B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.

(2) A prosecution for an attempt or conspiracy offense under this section or section 1957 [18 USCS 1957] may be brought in the district where venue would lie for the completed offense under paragraph (1), or in any other district where an act in furtherance of the attempt or conspiracy took place.

(3) For purposes of this section, a transfer of funds from 1 place to another, by wire or any other means, shall constitute a single, continuing transaction. Any person who conducts (as that term is defined in subsection (c)(2)) any portion of the transaction may be charged in any district in which the transaction takes place.

-----------------------------------------------------------------------------------------------------------------

(f)(5) Federal Statute: USCS 1962

1962. Prohibited activities

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code [18 USCS 2], to use or invest, directly or indirectly, **any** part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

-----------------------------------------------------------------------------------------------------------------

**(g)     Correspondence with law enforcement/regulatory agencies -** Identify any correspondence or communications received from or made to any state or federal law enforcement or regulatory agency regarding the facts and circumstances surrounding the claims of the plaintiff which are the subject of the present litigation.

Extensive documentation exists that was provided by the FBI, DHS, and the U.S. Attorneys' Office for the District of New Jersey to the defendant is available within the discovery evidence of United States v. Torres (Case #: 20-CR-418 BRM). This evidence can be made available by court order for this federal RICO case as most of the evidence supporting this complaint is under a protective order by this Court.

# SECTION 5: COUNTS

## COUNT 1: VIOLATIONS OF CIVIL RICO STATUTE 18 USC§ 1962(c) – SUBSTANTIVE ACT

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises affairs through a pattern of racketeering activity or collection of unlawful debt exceeding two predicate acts that equates to fraud, corruption, and activity in furtherance of prostitution, sex trafficking, and attempted collection of criminal debt.

**Defendants:  Sher Tremonte LLP; Justin M. Sher; Michael Tremonte; Noam Biale; Anna Estevao.**

## COUNT 2: VIOLATIONS OF CIVIL RICO STATUTE 18 USC§ 1962(d) – RICO Conspiracy

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section. Incorporating all of the above, the defendants acted as a criminal enterprise that is run as a business with a pattern of illegal conduct.  Defendant's goals are to gain significant revenue while causing significant injury to the plaintiff, Jose Torres.

**Defendants:  Sher Tremonte LLP; Justin M. Sher; Michael Tremonte; Noam Biale; Anna Estevao; Tore Ikeland Law PLLC; Tore Ikeland; Jessica Coonrod; Argentino, Fiore Law Advocacy LLC; Jodi Argentino; Celeste Fiore; Frank Morano.**

# SECTION 6: INJURIES / DAMAGES

**(a) Injury to Business** – Calculation of Injury to Business

"Loss of employment due to RICO violations is injury to business and not personal injury and so resulting loss of wages, benefits and damage to reputation are compensable under 1964(c)."  *Shearin v. EF Hutton Group Inc.*, 885 F.2d 1162 (3rd Cir, 1980).

## 1964.  Civil remedies

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter [18 USCS 1962] may sue therefor in any appropriate United States district court and **shall recover threefold the damages he sustains** and the cost of the suit, including a reasonable attorneys fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962 [18 USCS 1962]. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

Plaintiff suffered loss of wages, benefits, and irreparable damage to reputation, as detailed below.

Loss of Wages from February 14, 2020 to Present

Plaintiff's base annual income at the time of his arrest was $224,000 USD for fiscal year 2020. Jose Torres' base annual income for the last three tax filings were:

2019, 2018 and 2017:
    2019 gross wages = $213,184
    2018 gross wages = $228,252
    2017 gross wages = $132,026 (new job at the end of May)

Total loss of wages from February 14, 2020 to present = ~ $630,000+ plus bonuses.  Torres forewent significant promotions.

Benefits include health insurance, 401k, workman's compensation, and disability insurance:

    2019 benefits lost = ~ $15,000 estimated
    2018 benefits lost = ~ $13,500 estimated
    2017 benefits lost = ~ $12,000 estimated
    Total loss of benefits from February 14, 2020 to present = ~ $40,500

    Total loss of wages = ~$670,500

Damage to Torres' Reputation – cost of 20 years building his reputation

The plaintiff graduated from Rutgers University School of Business with a B.S. in Accounting in 2000 with honors.  He went on to build a career, starting out with the top accounting firm Ernst & Young, LLP.  Torres worked there for 2 years before accepting a position with Univision Communications as a Senior Auditor managing operational, financial and compliance audits.  As Torres continued to build a reputation of reliability through hard work, he was offered and accepted a position with Sun Chemical as a Supervisor in the Internal Audit Department where Torres managed staff and audits around the world.  Torres began building expertise in forensic and technical accounting and became well known both in an outside of his company for his skills and knowledge.  Torres was recruited to work for Protiviti Consulting, a subsidiary of Robert Half International, the second largest recruiting firm in the world, handling the company's largest clients in the forensic, operation, and financial space.  Torres' final job position before his arrest was with DLA Consulting, a multi-million dollar accounting firm with over 100+ consultants with tens of dozens of worldwide clients, including clients in financial services healthcare, private equity, hospitality, gun manufactures to just name a few.  Torres' main accounts were with the German gun manufacturer Sig Sauer, Selina Hotels, Bank of New York, CDM Smith to name a few.  Torres worked for DLA since 2016 and started as a senior manager.  Within months, Torres was promoted to Managing Director.  Torres had a perfect record with Human Resources and was considered by the C-level executives as one of their most trusted, well respected, and essential executives of the firm.

At the time of Torres' arrest, Torres could have been hired by virtually any accounting or consulting firm in the world.  Torres could have been hired as the Chief Financial Officer or held another C-level position.  The damage suffered to Torres' business reputation is the compilation of 20 years of late nights, cancelled flights, long meetings, dedication, simple hard work, and thought leadership.  Torres was at the very beginning of the top of his career.

    College education ~ $25,000 (including expenses) per year x 4 years = ~ $100,000 or $0.10 million
    20 irreplaceable year's reputation building: $3.0 million ($150,000 per year estimated average)
    Total cost for loss of reputation = $3,100,000 or $3.1 million

## Loss of Future Income

Plaintiff, Jose Torres, was 42 years old at the time of his arrest and had at least 25 years of additional years where Torres would earn a top escalating executive salary. While Torres was comfortable at his last employment, Torres could readily receive offers for $350,000+ base salary plus bonus per year, with his knowledge, and experience. At this point, Torres may be unemployable in his field from his loss of reputation caused by defendants.

2021-2025 projected income = $1.75 million
2026-2030 projected income = $1.75 million
2031-2035 projected income = $1.75 million
2036-2040 projected income = $1.75 million
2041-2045 projected income = $1.75 million
Total future income lost = $8.75 million

## Other Injuries Suffered

1. False imprisonment
2. Loss of relationship with Torres' children and mother
3. Torres put in harm's way at a maximum security jail
4. Mental and emotional anguish
5. Degradation
6. Humiliation
7. Shame
8. Embarrassment
9. Anxiety
10. Fear
11. Intimidation
12. Anguish
13. High-blood pressure driven by injuries/and conditions at the jail
14. Inconvenience
15. U.S. Government disparaged Torres in newspaper(s) and on the internet
16. Paid attorney fees $60,000+
17. Loss of personal belongings, including pictures of Torres' children and family
18. Loss of vehicle, 2017 Grey Honda Civic

Total other injuries ~ $5,000,000 or $5.0 million

## Combined Total Injury

Total loss of wages from February 14, 2020 to present = ~ $670,500 or $0.675 million
Total cost for loss of reputation = ~ $3,100,000 or $3.1 million
Total future income lost = ~ $8,750,000 or $8.75 million
Total other injuries = ~ $5,000,000 or $5.0 million
Total Combined Injury = ~ $17,520,500 or $17.5 million

**Total combined injury times three fold for treble damages = $52,561,500 USD or ~ $52.6 million which does not include significant executive level promotions Torres forewent.**

**(b) Violations Causing Injuries** - Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

The criminal enterprise of the co-defendants could not be complete without the utilization of the relationship with Sher Tremonte LLP former employee Emma S. Spiro, as A.U.S.A. Emma S. Spiro is the engine that runs the collection activities for Sher Tremonte LLP; Tore Ikeland PLLC; and Argentino, Fiore Law Advocacy LLC. For this and other reasons, Sher Tremonte attorneys, Tore Ikeland Law PLLC attorneys and Argentino, Fiore Law Advocacy PLLC attorneys have a direct conspiratorial relationship with Emma Spiro.

Sher Tremonte utilized their former authority as Emma Spiro's employer to induce her to initiate an unprecedented criminal charge against the Plaintiff by attempting to prosecute a "john" on a statute passed by Congress to criminalize the actual clients of the said law firms. No other "john" in the 110+ year history has ever been convicted of this charge. While the success of conviction may be difficult, the upside for the co-conspirator law firms and related attorneys can double, triple, or triple the law firms' annual revenues and related net profits by opening up the untapped multi-billion dollar prostitution and sex trafficking collection market to these law firms.

This criminal charge lodged against defendant Jose Torres caused defendant to lose his job, wages, benefits, reputation and relationship with his children and the relationship these children had with Torres' family.

Furthermore, defendant has been incarcerated against his will for the entire period from his arrest date on February 14, 2020 to present. The co-conspirators enticed prostitutes and sex traffickers to use false allegations of violence to cause the defendant, who has never committed a crime in his life, to get his bail denied and be remanded to a maximum security county jail.

This same county jail, Essex County Correctional Facility ('ECCF') has caused Torres to be housed with violent criminals with extensive criminal records. ECCF has become known as one of the deadliest county jails in America as detailed in the December 2021 New York Times article, with frequent murders, stabbings, and violent gang related fights.

Jose Torres further has had to sustain his life during severe Covid-19 lockdown conditions that included violations of his Constitutional rights under the 1st Amendment lack of access to clergy, 5th Amendment lack of access to his attorneys, 8th amendment insufficient medical care including no doctors or dentists, 8th Amendment no access to family visits, 8th amendment severe isolation for 23+ hours per day in a closet sized cell. Jose Torres suffers from high blood pressure and is at risk daily for death from Covid-19, not to mention the violent gang environment that surrounds the Essex County Correctional Facility.

**Total combined injury times three fold for treble damages as stipulated by the law = $52,561,500 USD**

**(c) Each Defendant's Liability** - List the damages sustained by reason of the violation of Section 1962, indicating the amount for which each defendant allegedly is liable.

All defendants are equally liable for damages sustained and will be responsible and brought to justice.

# SECTION 7: INJUNCTIVE RELIEF & RESTRAINING ORDER

**1964 (a) reads:**

"The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter [18 USCS 1962] by issuing appropriate orders, including, but not limited to: **ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in**, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons."

## EMERGENT INJUNCTIVE RELIEF & RESTRAINING ORDER

Incorporating all of the above, Plaintiff requests this Court for an emergency injunction upon defendants and order defendants to discontinue all relationships with each other, known and unknown, in the criminal enterprise of collection of criminal debt derived from prostitution and sex trafficking; and immediately dissolve all secretive agreements made toward this ongoing criminal enterprise. Injunctive relief should include sanctions for violation of injunctive order.

# SECTION 8: DEMAND FOR JURY TRIAL

On all facts, count(s) and claim(s) asserted, Plaintiff demands a trial by jury as it is the Plaintiff's United States Constitutional Right, guaranteed by Amendment VII of the United States Constitution.

# SECTION 9: PRAYER

Plaintiff incorporates by reference statement of claim and all counts within this complaint, as fully set forth here.

A. Declaratory judgment that the acts of the defendants, employees, and/or agents violated 18 U.S.C.S § 1964(c) and/or (d) under the laws of the State of New Jersey and the United States of America causing significant injuries to Plaintiff, Jose Torres

B. Grant immediate Injunctive Relief to halt defendants' actions to attempt to collect criminal debt from citizens, "johns", business people, public figures, etc. derived from the illegal business of prostitution and sex trafficking industry.

C. Grant compensatory and punitive judgment in favor of the Plaintiff, Jose Torres.

## CERTIFICATION OF PLAINTIFF

I, Jose Torres, Plaintiff, certify under penalty of perjury, that I am personally familiar with all facts, allegations, and statements made within this complaint based on personal knowledge. I certify that all facts, allegations, and statements made are true and correct to the best of my knowledge and belief. I understand there are penalties for knowingly providing false statements and/or claims.

SIGNED:      x _____              DATE: _July 10th, 2022_

Jose Torres